IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD A. GRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-cv-0297-MJR |
| ) | |
| ST. JOHN'S UNITED METHODIST ) | |
| CHURCH, THE ILLINOIS GREAT ) | |
| RIVERS CONFERENCE OF THE ) | |
| UNITED METHODIST CHURCH and ) | |
| REVEREND SHERYL PALMER, in her ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

In April 2012, Richard Graham filed an 8-count complaint against St. John's United Methodist Church ("St. John's"), The Illinois Great Rivers Conference of the United Methodist Church ("IGRC") and Reverend Sheryl Palmer ("Palmer"). Graham alleges violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d); the Illinois Wage and Collection Act ("IWPCA"), 820 ILCS 115/*et seq.*; as well as common law actions for intentional infliction of emotional distress and negligent supervision.

St. John's moves to dismiss Counts 1 through 4 of Graham's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 21).

1

The motion is fully briefed and ready for disposition. The Court begins its analysis with a recitation of the factual background.

I.     Factual Allegations

The complaint alleges the following facts. In 1996, Graham was the victim of a serious beating in which he suffered multiple concussions, multiple fractures including parts of his face, and severe contusions over a substantial portion of his body. Graham's head injuries resulted in a permanent disability of his cognitive processes leaving him with difficulty articulating his thoughts and comprehending, especially in stressful situations. In August 2008, Graham was hired as a part-time custodian at St. John's and was told that he would work 25 hours a week. A short time after Graham began his employment, the other part-time custodian left, and Graham assumed all custodial duties at the church. He performed his duties in a satisfactory manner. Palmer told Graham that regardless of the extra work load and the number of hours worked, he would only be paid for 25 hours a week.

As a result of his head injuries, Graham is a very acquiescent individual, especially with authority figures like Palmer. Palmer took advantage of Graham's disability and required him to work seven days a week, averaging 35 to 40 hours, while only allowing him to put approximately 25 hours on his timesheet. Palmer called Graham "stupid"

and "retard" and allowed other members to call him these names as well. She yelled at Graham in front of others in order to embarrass him.

About June 6, 2011, Julia and Darol Holsman, who were members of St. John's and advocates for Graham's employment, asked the IGRC to investigate Palmer's mistreatment of Graham. The Holsmans also assisted Graham in filing a complaint with the Illinois Department of Labor ("IDOL").

Graham repeatedly asked Palmer and St. John's for accommodation for his mental challenges, but they refused to accommodate him. In July 2011, the Holsmans told Palmer and St. John's that Graham was ill and scheduled for surgery. On August 15, 2011, Palmer unilaterally scheduled Graham to return to work. In a letter dated August 17, 2011, Palmer told Graham that if he did not notify St. John's of his health status by August 23, 2011, St. John's would "*assume* [he] resigned his position." On August 23, 2011, Graham was discharged.

II. <u>Legal Standard</u>

A 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. ***Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811 (7th Cir. 2009).** Dismissal is warranted under Rule 12(b)(6) if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." ***Bell***

3

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *Tricontinental Industries, Inc., Ltd. v. PriceWaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.), *cert. denied*, 128 S. Ct. 357 (2007); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006).

In *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008), the Seventh Circuit emphasized that even though *Bell Atlantic* "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required.

"A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.* Accord *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008)("surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the allegations "must be enough to raise a right to relief above the speculative level").

III.	Discussion

    A.	<u>Motion to strike compensatory and punitive damages – Count 4</u>

As an initial matter, St. John's moves to strike Graham's claim for compensatory and punitive damages in Count 4, which is based on retaliation under the ADA. Graham admits his error, conceding that compensatory and punitive damages are not currently available under an ADA retaliation claim. So, Graham voluntarily withdraws his claim for compensatory damages (Count 4, ¶ B). Graham correctly observes that he made no claim for punitive damages in Count 4, so St. John's motion to strike a demand for punitive damages as to this Count is moot. Consequently, the Court will withdraw Graham's claim for compensatory damages and deny as moot St. John's motion to strike the prayer for punitive damages in Count 4.

    B.    <u>Counts 1 and 2 – Violation of the ADA and Failure to Reasonably Accommodate in Violation of the ADA</u>

St. John's contends that Graham has not sufficiently pleaded that he has a disability that substantially limits one or more major life activities, as is required to state a claim under the ADA. Specifically, St. John's maintains that Graham fails to allege a mental impairment that substantially limits a major life activity, a record of such an impairment or that he was regarded as having such an impairment.

Graham was hired as a custodian for St. John's in August 2008 and was discharged in August 2011. Consequently, he began his employment prior to the effective date of the ADA Amendments Act of 2008

("ADAAA"), January 1, 2009, but continued in his employment after the Act became effective.[1]

St. John's contends that much of the alleged discriminatory conduct that formed the basis of Graham's complaints with the EEOC and this Court occurred prior to the effective date of the amendments. St. John's maintains that Graham fails to adequately plead which of the alleged acts occurred within 300 days of his filing the charge of discrimination with the EEOC and that any claims outside the statutory time period are barred. Graham responds that he has adequately alleged that Palmer took advantage of his mental disability by forcing him to work seven days a week for two-and-a-half years.

It is premature for the Court to decide whether any of the acts alleged by Graham are time-barred, whether most of the acts occurred after the amendments became effective or whether all acts of which Graham complains are actionable under a continuing violations theory. This can only be determined on a fuller record after further discovery has occurred. The Court notes, however, that presently in evidence is the IDOL Inspection Report (Doc. 2-3). The Report indicates that between August 2008 and August 2011, 22 violations of the One Day Rest in Seven Act occurred. This appears to contradict St. John's assertion that most of the alleged

---

[1] The Seventh Circuit has concluded that the ADA Amendments are not retroactive. **See Winsley v. Cook County,** 563 F.3d 598, 600 n. 1 (7th Cir. 2009); **Kiesewetter v. Caterpillar Inc.,** 295 Fed. Appx. 850, 851 (7th Cir. 2008).

discriminatory conduct occurred prior to the effective date of the amendments.

In order to allege disability discrimination, Graham must claim that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (3) he suffered from an adverse employment action because of his disability. ***Hoppe v. Lewis University*, 692 F.3d 833, 839 (7th Cir. 2012),** *citing **Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005).** St. John's asserts that Graham's claims fail at the first prong of the test - that he is not an individual with a disability within the meaning of the ADA.

The ADA definition of "disability" does not differ from that of the ADAAA: "(a) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." ***E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 639 (7th Cir. 2010),** *quoting* **42 U.S.C. § 12102(1)**. Major life activities include concentrating, thinking and communicating. **42 U.S.C. § 12102(2)(A)**.

The ADAAA provides more generous coverage than the ADA by providing that the definition of disability "shall be construed in favor of broad coverage of individuals ... to the maximum extent permitted by the terms of [the Act.]" **42 U.S.C. § 12102(4)(A)**. The associated regulations instruct

7

courts to be liberal in determining whether a plaintiff is substantially limited: "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." **29 C.F.R. § 1630.2(j)(1)(i)**.

Graham alleges that he has permanent brain damage which causes him difficulty articulating his thoughts, slowness to comprehend and difficulty challenging anyone he views as a figure of authority. As such, he has alleged sufficient facts to meet the definition of an individual with a disability. His claims are detailed enough to meet the requirements of **Twombly** and, consequently, sufficient to survive St. John's motion to dismiss.

Furthermore, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in Graham's favor, he has sufficiently pleaded that he was regarded as an individual with a disability. Being "regarded as" having a disability "means that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment…." **29 CFR § 1630.2(g)(ii)**. The Seventh Circuit has clarified that in order to proceed under this prong of the ADA, a plaintiff must allege "that the employer believed that the employee '(1) had an impairment (2) that substantially limited (3) one or more major life

activities.'" ***Squibb v. Memorial Medical Center***, **497 F.3d 775, 786 (7th Cir. 2007) (citation omitted)**.

Graham claims that Palmer called him a "retard" on multiple occasions as well as allowing other staff members to call him by that epithet. Graham also claims that Palmer took advantage of his mental impairment by requiring him to work seven days a week and to do both custodial work and personal chores for her. Moreover, Graham claims that Palmer asked the Holsmans to act as advocates for him with respect to his employment at St. John's after she learned of his impairment. These allegations are sufficient to survive St. John's motion to dismiss on the issue of whether Palmer regarded Graham as an individual with a disability.

Next, the Court must consider whether Graham could perform the essential functions of the custodial position with reasonable accommodation. An individual with a disability falls within the definition of a "qualified individual with a disability" if he can perform the essential functions of the desired position with reasonable accommodation. **42 U.S.C. § 12111(8)**. Under the ADA, an employer must provide a qualified individual with a reasonable accommodation. ***Jackson v. City of Chicago*, 414 F.3d 806, 812 (7th Cir. 2005),** *citing Rehling v. City of Chicago,* **207 F.3d 1009, 1014 (7th Cir.2000)**; **42 U.S.C. § 12111(9)(B) (listing examples of reasonable accommodations)**. "[A] reasonable accommodation is connected to what the employer knows about the specific

9

limitations affecting an employee who is a qualified individual with a disability." *Id.* at 813, *citing* **42 U.S.C. § 12112(b)(5)(A) (defining the term "discriminate" to include "not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability" (emphasis added); Beck v. Univ. of Wisconsin Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996) ("By the statutory language, 'reasonable accommodation' is limited by the employer's knowledge of the disability.")**. So, the federal regulations contemplate the employer's undertaking an informal, interactive process with the individual in need of accommodation to determine the appropriate reasonable accommodation. *Id.* In ***Rehling v. City of Chicago*, 207 F.3d 1009 (7th Cir. 2000)**, the Seventh Circuit held that, based on its understanding of the interactive process requirement, "a plaintiff must allege that the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual." **207 F.3d at 1016**.

Graham alleges that St. John's initially offered to accommodate him by allowing the Holsmans to act on his behalf in employment matters. According to Graham, the failure to accommodate involved St. John's decision to no longer allow the Holsmans to fill this role. Graham alleges that he "repeatedly asked Palmer and St. John's to communicate with or through the Holsmans as his attorneys-in-fact/advocates ... as an

accommodation for his mental challenges," but they "repeatedly refused to do so." So, Graham's claim is that St. John's eliminated an accepted accommodation without engaging in any interactive process. Stated another way, Graham alleges that he and St. John's had an agreed-upon reasonable accommodation, but St. John's unilaterally withdrew the accommodation and then failed to engage in an interactive process, resulting in a failure to identify an appropriate accommodation for him. Under these circumstances, the fault in the failure to make the accommodation available would be St. John's. **Mays v. Principi**, **301 F.3d 866, 870 (7th Cir. 2002)**, *citing* **Emerson v. Northern States Power Co.**, **256 F.3d 506, 515 (7th Cir. 2001)**; **Ozlowski v. Henderson**, **237 F.3d 837, 840 (7th Cir. 2001).** As a result, although it is Graham's burden to show that a particular accommodation is reasonable, that burden was met by the fact that St. John's chose the accommodation requested at the time Graham was hired.

    C.    <u>Hostile Work Environment - Count 3</u>

St. John's contends that a hostile work environment claim may not cognizable under the ADA and that, in any case, Graham has not pleaded facts sufficient to support such a claim. In a nutshell, St. John's asserts that (1) Graham has not sufficiently alleged that his workplace was so permeated with discrimination and intimidation as to alter the conditions of his employment; (2) the remarks alleged by Graham are insensitive and childish, but insensitive and childish remarks are not actionable; and (3)

11

Graham has not sufficiently alleged that statements by Palmer and other staff members impacted his janitorial duties or interfered with his ability to perform those duties.

The Court has carefully reviewed Graham's response to St. John's motion to dismiss and finds that Graham has failed to respond to St. John's motion as to the hostile work environment claim, Count 3. Pursuant to Local Rule 7.1(c) Graham's failure to respond may, in the Court's discretion, be considered an admission of the merits of the motion. Accordingly, the Court will grant St. John's motion and dismiss Count 3 of Graham's complaint.

D. Retaliation – Count 4

St. John's contends that the Court should dismiss the retaliation count because Graham fails to plead that he was discharged because of an activity that was protected by the ADA or, in the alternative, that he fails to satisfy the **Twombly** pleading standard.

An employer may not discriminate against an employee who has opposed any practice made unlawful under the ADA because the employee made a charge or participated in an investigation under the Act. **42 U.S.C. § 12203(a)**. It is unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise … of, any right granted or protected by [the Act]." **42 U.S.C. § 12203(b)**. "The ADA prohibits employers from retaliating against employees who assert their right under the act to be free

from discrimination." ***Povey v. City of Jeffersonville, Ind.*, 2012 WL 4676742, at \*4 (7th Cir. 2012)**, *citing* **42 U.S.C. § 12203(a)**. "Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless." ***Id., quoting Dickerson v. Bd. of Educ.*, 657 F.3d 595, 602 (7th Cir. 2011)**. Even if the employee was not disabled, it would still violate the ADA if the employer retaliated against him for attempting to raise a good-faith claim under the ADA. ***Cassimy v. Bd. of Educ. of Rockford Pub. Schools, Dist. No. 205*, 461 F.3d 932, 938 (7th Cir. 2006)**.

To state a claim for retaliation under the ADA, "a plaintiff must allege: 1) a statutorily protected activity; 2) an adverse employment action; and 3) a causal link between the protected activity and the employer's action." ***Mounts v. United Parcel Service of America, Inc.*, 2009 WL 2778004, at \*4 (N.D.Ill. 2009)**, *citing McClendon v. Ind. Sugars, Inc.*, **108 F.3d 789, 796 (7th Cir. 1997)**.

According to Graham, he was discharged after engaging in a statutorily protected activity. He alleges that he first attempted unsuccessfully to resolve his concerns with St. John's, questioning the hours he was working and for which he was not compensated. He then complained to the EEOC and the IDOL that Defendants discriminated against him because of his mental impairment. Graham claims that his termination

13

was in retaliation for engaging in these activities which are protected under the ADA.

As Graham points out, at this stage, it is not what he can prove but only what he has pleaded. These allegations support a viable claim of retaliation under the ADA.

IV. Conclusion

For the foregoing reasons, the Court **GRANTS in part, DENIES in part and DENIES as moot in part** St. John's motion to dismiss and, in the alternative, to strike (Doc. 21). The Court **GRANTS** St. John's motion to dismiss Count 3, **DENIES as moot** St. John's motion to strike punitive damages under Count 4 and **DENIES** St. John's motion in all other respects. Lastly, the Court **GRANTS** Graham's request for withdrawal of compensatory damages under Count 4.

IT IS SO ORDERED.

DATED this 25th day of October, 2012

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge